UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ERICK JOSEPH FLORES-POWELL,        )
    Petitioner,                   )
                         )
        v.                        )    C. A. No. 08-11696-MLW
                         )
BRUCE CHADBOURNE, et al.,          )
    Respondents.                  )

MEMORANDUM AND ORDER

WOLF, D.J.                                              January 7, 2010

I.  INTRODUCTION

    Erick Joseph Flores-Powell ("Flores") has been detained for 22 months pursuant to the mandatory detention statute, 8 U.S.C. §1226(c), while he awaits the adjudication of deportation proceedings.  He filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 (the "Petition").  In the Petition, as well as in other submissions, he argues that the mandatory detention provision of the relevant statute does not apply to him and that his prolonged mandatory detention violates his right to due process.  Respondents have filed a response and move to dismiss the Petition.

    For the reasons stated below, the Petition is being allowed.[1]

---

[1]This Memorandum and Order memorializes and amplifies the reasoning underlying the court's December 14, 2009 Order.  The court notes that the First Circuit's decision regarding mandatory detention in Saysana v. Gillen, No. 09-1179, 2009 WL 4913289 (1st Cir. Dec. 22, 2009), was not released until eight days after the court allowed the petition in this case and, in any event, addresses an issue not raised by the parties in this case.

In summary, the court has concluded that exhaustion of administrative remedies is not required, that the court lacks jurisdiction to consider whether petitioner is deportable, and that petitioner's mandatory detention has continued for an unreasonable period of time and, therefore, violates the implicit requirement of 8 U.S.C. §1226(c). The court has also concluded that in these circumstances detention authority does not automatically revert to 8 U.S.C. §1226(a) and that a court granting the equitable remedy of habeas corpus may exercise its discretion to fashion an appropriate remedy. Thus, the court will conduct a hearing to determine whether Flores is dangerous to the community or a flight risk. Accordingly, the government's Motion to Dismiss is being denied, and Flores's Motion to Sustain Habeas Corpus Petition is moot.

II. FACTS AND PROCEDURAL HISTORY

Flores is a citizen of Panama and a lawful permanent resident of the United States.[2] Pet. at 2, 13; May 12, 2009 Decision of the Immigration Judge, Ex. A to Resp'ts' Report Pursuant to Ct.'s Order of Oct. 20, 2009 ("May 12, 2009 Decision"), at 2. He is nineteen years old and entered the United States legally with his family in April, 1995, at the age of five. May 12, 2009 Decision at 3. He is the father of a young child who is a citizen of the United

---

[2]The court has drawn facts from the administrative record submitted by the parties. The material facts of this case, specifically the date detention was initiated and the sequence of administrative decisions since that time, have not been disputed.

States and is, by all accounts, close with his immediate and extended family. Id. at 6-8. Flores has been accused of participation in gang-related criminal activity prior to his detention. Id. at 5-6.

    A.   Proceedings in the State Court and Immigration Courts

On January 31, 2008, Flores was convicted in Massachusetts state court for possession of a controlled substance (marijuana) with intent to distribute in violation of Chapter 94C, Section 32C(a) of the Massachusetts General Laws. Id. at 2. Flores asserts that the charges arose from an incident in which police stopped a car that was allegedly driving erratically. Police Report, Ex. B to Resp. to Resp'ts' Last Mot. to Dismiss and Req. to Grant Pet'r's Habeas Corpus ("Police Report"). After observing evidence of marijuana use in the car, the police arrested Flores, who was a passenger. Id. During a search incident to arrest, they found six individually wrapped bags of marijuana in Flores's sock. Id. The weight of the marijuana recovered from Flores was less than 12 grams. Laboratory Report, Ex. C to Resp. to Resp't's Last Mot. to Dismiss and Request to Grant Pet'r's Habeas Corpus ("Lab Report"). There is no direct evidence in this proceeding that Flores was selling the marijuana as opposed to possessing it for personal or social use.

On February 6, 2008, Flores was taken into custody by Immigration and Customs Enforcement ("ICE") and was served with a

-3-

notice to appear on February 7, 2008.  Petition at 2.[3]  Flores was
charged with removability pursuant to 8 U.S.C. §1227(a)(2)(A)(iii)
(conviction of an aggravated felony) and §1227(a)(2)(B)(i)
(conviction of violating a law relating to a controlled substance).
Based on his conviction of an aggravated felony and of an offense
relating to a controlled substance, Flores was subject to mandatory
detention under 8 U.S.C. §1226(c)(1)(B).[4]

Flores was initially represented by counsel, who moved to
withdraw for unknown reasons on March 11, 2008.  May 12, 2009
Decision at 2.  This caused a hearing to be rescheduled from March

---

[3]Although there is no documentary evidence before the court
that this is the precise date that Flores was taken into custody,
respondents have never disputed this allegation and adopted it in
their response to the Petition.  See Response and Motion to
Dismiss the Petition for Writ of Habeas Corpus at 3.  Moreover,
this date is roughly consistent with the Immigration Judge's
statement that Flores was personally served with the Notice to
Appear on February 7, 2008.  May 12, 2009 Decision at 2.

[4]The pertinent statutory language is: "The Attorney General
shall take into custody any alien who...is deportable by reason
of having committed any offense covered in section
1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title."
Section 1227(a)(2)(A)(iii) states that "[a]ny alien who is
convicted of an aggravated felony at any time after admission is
deportable." 8 U.S.C. §1227(a)(2)(A)(iii).  A state law offense
generally may be considered an aggravated felony only if it is
punishable as a felony under federal law.  See Lopez v. Gonzales,
549 U.S. 47, 59 (2006).
Section 1227(a)(2)(B)(i) states that "[a]ny alien who at any
time after admission has been convicted of a violation of (or a
conspiracy or attempt to violate) any law or regulation of a
State, the United States, or a foreign country relating to a
controlled substance (as defined in section 102 of the Controlled
Substances Act (21 U.S.C. 802)) other than a single offense
involving possession for one's own use of 30 grams or less of
marijuana, is deportable."

12, 2008, to March 26, 2008.  <u>Id.</u>  Flores was represented by new counsel at the March 26, 2008 hearing, but new counsel moved to withdraw on May 12, 2008, for unknown reasons.  <u>Id.</u>  The second withdrawal did not apparently cause any delay.  <u>Id.</u>  After this second withdrawal in May, 2008, Flores proceeded <u>pro</u> <u>se</u> in the Immigration Court.  <u>Id.</u>

On May 27, 2008, Flores appeared before an Immigration Judge and was ordered removed.  <u>Id.</u>  On June 26, 2008, Flores appealed the order of removal to the Board of Immigration Appeals ("BIA").  <u>Id.</u>  On August 26, 2008, the BIA stated that "[t]he Immigration Judge did not prepare a separate oral or written decision in this matter setting out the reasons for the decision" and that "[a]n explanation of the reasons in the transcript is not sufficient."[5] Aug. 26, 2008 Decision of the BIA, Ex. C to Mem. of Law in Supp. of Mot. to Dismiss ("Aug. 26, 2008 Decision").  The BIA remanded the case to the Immigration Judge and ordered that the Immigration Judge prepare a "full decision" for review.  <u>Id.</u>

On September 24, 2008, the Immigration Judge complied and issued a two-page decision.  Sept. 24, 2008 Oral Decision, Ex. D to Mem. of Law in Supp. of Mot. to Dismiss ("Sept. 24, 2008

---

[5]There are some minor discrepancies in the record relating to dates of actions by the Immigration Judge and the BIA.  For example, the May 12, 2009 Decision states that the BIA remanded the case for the first time on September 3, 2008.  May 12, 2009 Decision at 3.  Where possible, the court has resolved such discrepancies by drawing dates from the original documents at issue.

Decision").   The  Immigration  Judge  concluded  that  Flores  was

removable  on  two  grounds,  namely  conviction  for  an  aggravated

felony  (deportable  under  8  U.S.C.  §1227(a)(2)(A)(iii))  and

conviction  for  a  violation  of  a  law  relating  to  a  controlled

substance  (deportable  under  8  U.S.C.  1227(a)(2)(B)(i)).   Id. at 1-

2.   On November 4, 2008, Flores appealed that decision.[6]   May 12,

2009 Decision at 3.

On December 24, 2008, the BIA vacated the Immigration Judge's

decision and remanded the matter to the Immigration Court for a new

hearing.   Dec. 24, 2008 Decision of the BIA, Ex. A to Mem. of Law

in Supp. of Mot. to Dismiss ("Dec. 24, 2008 Decision").   The BIA

concluded that, despite the fact that Flores raised the issue, the

Immigration  Judge  did  not  explicitly  consider  whether  Flores

qualified  for  the  mitigating  exception  in  21  U.S.C.  §841(b)(4),[7]

which punishes distribution of a small amount of marijuana without

remuneration  as  a  misdemeanor  and  would,  therefore,  change  the

_____

[6]The  appeal  was  docketed  at  an  earlier  date,  October 6,
2008.   Ex. F to Mem. of Law in Support of Mot. to Dismiss.  This
discrepancy may reflect the fact that the Immigration Judge
forwarded the record to BIA without waiting for an appeal.  That
seems to have been the procedure contemplated by the August 26,
2008 Decision.

[7]21 U.S.C. §841(b)(4) provides: "Notwithstanding paragraph
(1)(D) of this subsection, any person who violates subsection (a)
of this section by distributing a small amount of marihuana for
no remuneration shall be treated as provided in section 844 of
this title and section 3607 of Title 18."  A first conviction
under 21 U.S.C. 844 and 18 U.S.C. 3607 is punishable by no more
than 1 year imprisonment.

classification of Flores's state conviction from an aggravated felony to the equivalent of a misdemeanor under federal law.  Id. at 2.

On February 18, 2009, the Immigration Judge "reiterated" his previous decision that Flores was not eligible for bail and subject to mandatory detention.  Aug. 17, 2009 Decision, Ex. B to Resp. and Mot. to Dismiss ("Aug. 17, 2009 Decision"), at 2.

The Immigration Judge eventually concluded that the aggravated felony charge could not be sustained because the mitigating exception applied.  May 12, 2009 Decision at 3, 12.  Specifically, the Immigration Judge found that Flores "submitted a notarized drug laboratory report to prove that the net weight of the marijuana found in six small bags was less than 12 grams" and "provided sufficient evidence to establish that he possessed a small amount of marijuana in a situation which represented casual sharing with no remuneration."  Id. at 12.  Nonetheless, the Immigration Judge found that Flores remained deportable pursuant to 8 U.S.C. 1227(a)(2)(B)(i)(conviction for a drug offense).  Id. at 13.  On May 12, 2009, the Immigration Judge ordered Flores removed to Panama.[8]  Id. at 15.  Flores appealed the order, although it is not

---

[8]Additionally, on February 18, 2009, Flores filed an application for cancellation of removal, a form of discretionary relief for which he was not eligible if he was removable based upon conviction for an aggravated felony.  May 12, 2009 Decision at 3, 13.  On May 12, 2009, the Immigration Judge concluded that Flores was eligible for cancellation of removal, but exercised his discretion and denied the application.  Id. at 13.

clear from the record exactly when this occurred.

On July 14, 2009, the BIA remanded the case because, due to a tape recording error, the record of the proceedings below was defective.  July 14, 2009 Decision of the BIA, Ex. A to Resp. and Mot. to Dismiss the Pet. for Writ of Habeas Corpus ("July 14, 2009 Decision").  Specifically, an April 8, 2009 hearing was apparently recorded over a February 11, 2009 hearing and a February 18, 2009 hearing.  Id.  The BIA ordered the Immigration Judge to "take such steps as are necessary and appropriate to enable preparation of a complete transcript of the proceedings including a new hearing, if necessary."  Id.

On August 17, 2009, the Immigration Judge issued a supplemental oral decision describing what took place in the improperly taped portions of the earlier proceeding.  Aug. 17, 2009 Decision.  On September 1, 2009, Flores again appealed.  See Ex. C to Resp. and Mot. to Dismiss the Pet. for Writ of Habeas Corpus.  The briefs for that appeal were due October 6, 2009.  Id.  Respondents initially "anticipate[d] that it may take 45 days for the BIA to issue a decision," but noted that "when the BIA may issue a decision is uncertain."  Mot. for Extension of Time to File a Resp. at 2.  At a November 6, 2009 hearing before this court, respondents represented that, after making additional inquiries with the BIA, respondents believed that the appeal would be resolved six to eight weeks after the briefing was complete on

-8-

October 2, 2009.  Respondents subsequently requested an expedited decision from the BIA.  Ex. A to Nov. 13, 2009 Status Report at 2. Ten weeks have now elapsed from October 2, 2009, and the BIA has not decided the appeal.

   B.  Habeas Proceedings

   Flores filed a Petition for Writ of Habeas Corpus with this court on or about October 3, 2008, in which he challenges his prolonged detention and the constitutionality of mandatory detention under 8 U.S.C. §1226(c).  In the October 10, 2008 Service Order, the court directed respondents to respond to the petition within 20 days.  The court subsequently granted respondents' two motions for extension of time and ordered respondents to respond by January 5, 2009.

   On January 5, 2009, respondents moved to dismiss the petition on the grounds that the Supreme Court, in Zadvydas v. Davis, 533 U.S. 678 (2001), and Demore v. Kim, 538 U.S. 510 (2003), held that detention of an alien during removal proceedings is constitutional. The court denied that Motion to Dismiss on the grounds that (1) Zadvydas was inapplicable because there was no final order of removal, (2) Demore did not hold that indefinite detention during removal proceedings was constitutional, and (3) Judge Patti Saris of the District of Massachusetts had recently held in Winkler v. Horgan, No. 09-10190, 2009 WL 1812198 (D. Mass. June 25, 2009), that lengthy detention during removal proceedings raised a

colorable due process claim.  <u>See</u> Aug. 27, 2009 Order at 2-4.  The court ordered respondents to file their response to the petition. <u>Id.</u> at 5.

On October 16, 2009, respondents filed a Response and Motion to Dismiss the Petition for Writ of Habeas Corpus ("Response and Motion to Dismiss").  Respondents argue that (1) Flores's mandatory detention does not violate due process and (2) the court should decline to hear Flores's mandatory detention claims because Flores has not exhausted his administrative remedies.  Resp. and Mot. to Dismiss at 4, 10.  The court directed that, by October 30, 2009, (1) respondents file a copy of the Immigration Judge's May 12, 2009 decision, (2) each party report whether the Immigration Judge made an individualized determination that Flores poses a flight risk or a danger to society, and (3) Flores file any reply to the response to the Petition.  <u>See</u> Oct. 20, 2009 Order at 1.

On October 29, 2009, respondents filed a copy of the May 12, 2009 Decision and reported that "[t]he Immigration Judge . . . did not make an individualized determination of [Flores's] danger to society or flight risk."[9]  Report Pursuant to Ct.'s Order of

---

[9]In a filing entitled "Chronology" and filed on December 14, 2009, respondents included (in bold and italicized font, but without significant discussion or argument) a quotation from the Immigration Judge's August 17, 2009 decision, in which the Immigration Judge stated that, at the February 18, 2009 hearing, "the [immigration] court reiterated its previous decision that [Flores] was not eligible for bond or alternatively had not met his burden [with regard] to being released on bond."  Chronology at 7.  The court has not overlooked this statement by the

-10-

October 20, 2009, at 1.  Also on October 29, 2009, Flores filed his response and indicated that the Immigration Judge made no bail determination.  Resp. to Resp'ts' Last Mot. to Dismiss and Req. to Grant Pet'r's Habeas Corpus at 4-5.

The court held a hearing on November 6, 2009.  Based on respondents' representations that a decision by the BIA was expected soon, the court took the matter under advisement and ordered respondents to provide weekly reports regarding whether the BIA had decided Flores's appeal.  Nov. 9, 2009 Order at 1, 3.  The court also ordered supplemental briefing on (1) whether the court or the Immigration Judge should conduct any bail hearing, (2) which party should bear the burden of proof at the bail hearing, (3) whether the court can order an Immigration Judge who has not previously acted in the case to hold the bail hearing, and (4)

---

Immigration Judge, which was first provided to the court by respondents on October 16, 2009.  Indeed, it was this statement that prompted the court to order the parties to report whether the Immigration Judge made an individualized determination of flight risk or dangerousness.  See Oct. 20, 2009 Order at 1.
   The court does not interpret the emphasis on this statement in the Chronology as an attempt by respondents to retreat from their explicit representation to the court that no individualized determination had been made with respect to Flores's risk of flight or dangerousness.  See Report Pursuant to Ct.'s Order of October 20, 2009, at 1.  Moreover, even if respondents intended to alter their position, the doctrine of judicial estoppel operates to prohibit such a shift because the court accepted the October 29, 2009 representation and relied on it when structuring this proceeding.  See Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004).

whether the court may review a bail determination by the Immigration Judge. Id. at 1-3. The parties subsequently submitted supplemental memoranda on these issues.

On December 3, 2009, the court held a second hearing on this matter. At that hearing, the court did not decide the matter, but rather expressed tentatively the conclusions described in this Memorandum and stated that it would issue a written decision. The court also then appointed counsel for Flores and scheduled a bail hearing for December 15, 2009, so that the court could act expeditiously if it decided to grant the petition.

The BIA did not issue a decision before the December 15, 2009 hearing.

III.   ANALYSIS

The following relevant facts are not disputed.

Flores has been detained for a total of 22 months. Throughout this period of confinement, no arbiter has ever decided whether Flores's detention is appropriate because he poses a risk of flight or danger to society.

Approximately seven months of the period of detention are attributable to the Immigration Court's failure to create a record adequate for review by the BIA. Because the Immigration Judge did not prepare an adequate record of the reasons for his May 27, 2008 removal order, approximately four months elapsed between the issuance of that inadequate order and the issuance of the September

24, 2008 Oral Decision, which was sufficient for BIA review. Additionally, because the Immigration Court did not properly record hearings related to the May 12, 2009 Decision, an additional three months passed between the issuance of that decision and the issuance of the August 17, 2009 Decision, which corrected the gaps in the record.

The Immigration Judge found that Flores possessed less than 12 grams of marijuana and, to the extent that he intended to distribute it, received no remuneration. May 12, 2009 Decision at 12. Based on these findings, the Immigration Judge concluded that Flores qualified for the mitigating exception, 21 U.S.C. §841(b)(4) and, therefore, had not been convicted of an aggravated felony. Id.

As the Immigration Judge concluded that Flores has not been convicted of an aggravated felony, the sole remaining justification for Flores's mandatory detention and removal is his deportability pursuant to 8 U.S.C. §1227(a)(2)(B)(i) for a conviction of a violation of a law related to a controlled substance. Id. at 13. There is an exception to §1227(a)(2)(B)(i) which provides that a person is not deportable if he or she has committed only "a single offense involving possession for one's own use of 30 grams or less of marijuana."

A.   Exhaustion of Administrative Remedies

Respondents assert that the court should decline to review

Flores's claim that his mandatory detention is unlawful because Flores has failed to exhaust this claim in the administrative courts. Resp. and Mot. to Dismiss at 10. Respondents concede that no law requires exhaustion in this case and that it is within the court's discretion to decide whether to proceed. Id. at 11-12. Respondents state, however, that, as recognized in Demore v. Kim, 538 U.S. 510, 514 n.3 (2003), a detainee who has contested whether he is subject to mandatory detention receives a "Joseph hearing" at which the challenge to detention is adjudicated and from which a detainee may appeal to the BIA. Id. at 10. Here, respondents assert, Flores received such a hearing but did not appeal the Immigration Judge's determination that Flores is subject to mandatory detention. Id. at 10-11. Rather, Flores appealed only the order of removal. Id. at 10. According to the respondents, this failure to pursue an appeal of the decision regarding mandatory detention should persuade the court to decline to review the claim. Id. at 11.

As the parties acknowledge, there is no statutory requirement of exhaustion in this circumstance. See Campbell v. Chadbourne, 505 F. Supp. 2d 191, 197 (D. Mass. 2007). "Although exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress, courts have more latitude in dealing with exhaustion questions when Congress has remained silent." Portela-Gonzales v. Secretary of the Navy, 109 F.3d 74, 77 (1st Cir.

1997)(internal citation omitted).

Where the courts have latitude, a court may hear unexhausted claims in "'circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.'"  Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 145, 146 (1992)).  One such circumstance exists when "the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim.'"  Id. (quoting McCarthy, 503 U.S. at 146-47).  Another exists when "substantial doubt exists about whether the agency is empowered to grant meaningful redress."  Id. (citing McCarthy, 503 U.S. at 147-48).  A third occurs when "the potential decisionmaker . . . can be shown to have predetermined the issue."  Id. (citing McCarthy, 503 U.S. at 148).

A loss of liberty may be an irreparable harm.  See Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986)(stating, in the context of discussing irreparable harm, that "exhaustion might not be required if Bois were challenging her incarceration by the military or the ongoing deprivation of some other liberty interest"); Grant v. Zemski, 54 F. Supp. 2d 437, 442 (E.D. Pa. 1999); see also Patton v. Dole, 806 F.2d 24, 28 (2nd Cir. 1986); North v. Rooney, C.A. No. 03-1811, 2003 WL 21432590, at *6 (D.N.J. June 18, 2003); Seretse-Khama v. Ashcroft, 215 F. Supp. 2d 37, 53 & n.20 (D.D.C. 2002).

Additionally, to the extent that respondents' discussion of

<u>Vang v. Ashcroft</u>, 149 F. Supp. 2d 1027 (N.D. Ill. 2001), is intended to extend the exhaustion argument to Flores's constitutional or statutory claims regarding the length of his mandatory detention, such exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation of the mandatory detention statute.   See <u>Vongsa v. Horgan</u>, C.A. No. 09-11032, 2009 WL 4049143, at *4-5 (D. Mass. Nov. 24, 2009)(collecting cases regarding futility and concluding that "the BIA has clearly and repeatedly upheld the denial of a bond hearing under the view that §1226(c) mandates detention without bond"); <u>Ashley v. Ridge</u>, 288 F. Supp. 2d 662, 666-67 (D.N.J. 2003)(stating that "[t]he Immigration Court and Board of Immigration Appeals are courts of limited jurisdiction that cannot consider constitutional claims" and that, therefore, "it would undoubtedly be futile to await further administrative hearings when those proceedings cannot in any way address the constitutional claims at issue in this case"); <u>Matter of C-</u>, 20 I&N Dec. 529, 532 (BIA 1992)("[I]t is settled that the immigration judge and [the BIA] lack jurisdiction to rule upon the constitutionality of the Act and the regulations."); <u>see also</u> <u>Arango-Aradondo v. Immigration and Naturalization Serv.</u>, 13 F.3d 610, 614 (2nd Cir. 1994)("[T]he BIA does not have authority to adjudicate constitutional issues ...."). Therefore, as respondents have stated, it is within the court's discretion to decide this case now.

In exercising this discretion, the court must decide whether the "twin purposes of protecting administrative agency authority and promoting judicial efficiency" are outweighed by Flores's interest in immediate adjudication of his claim by this court.  See Portela-Gonzalez, 109 F.3d at 77.  Flores is mandatorily detained under 8 U.S.C. §1226(c)(1)(B) because the Immigration Court has determined he is deportable under 8 U.S.C. §1227(a)(2)(B)(i) based on a conviction for a drug offense.  He has appealed his removal order on the ground that his conviction is not actually a deportable offense.  Consequently, adjudication of the detention issue by this court will not unduly burden administrative agency authority, because the BIA has had and will have ample opportunity to exercise its authority to decide whether the predicate legal conclusion underlying Flores's detention is correct.  Moreover, given the extensive administrative record in this case, Flores has not failed "to take administrative proceedings seriously."  See Portela-Gonzalez, 109 F.3d at 79.  Nor has he made in bad faith any "end-run" around the administrative process.  See id. Consequently, in this particular circumstance, permitting a decision on the petition now does not present any compelling threat to agency authority or judicial efficiency.  Given Flores's lengthy and constitutionally questionable detention, the balancing of the factors in this case favors deciding Flores's claim now.  See Madrane v. Hogan, 520 F. Supp. 2d 654, 668 n.16 (M.D. Pa.

-17-

2007)(deciding habeas claim despite the fact that petitioner had never sought a custody review or bail hearing from the Immigration Judge).

Cases cited by respondents do not alter this conclusion.   In Groccia v. Reno, the First Circuit, in concluding an argument was forfeited, focused on the fact that a habeas petitioner "neglected to raise the issue . . . either during the administrative proceedings or in the district court."  234 F.3d 758, 762 (1st Cir. 2000).  Similarly, in Campbell, the petitioner had never raised the issue to be adjudicated before the Immigration Judge.  See 505 F. Supp. 2d at 197.   Here, Flores has raised the issue of his detention before both the Immigration Judge and this court. Although the court in Arias v. Rogers declined to decide a habeas corpus petition filed in the brief gap between the arrest and the initiation of deportation proceedings, it did so with the express understanding that habeas relief could become appropriate at a later stage of the proceeding. See 676 F.2d 1139, 1143-44 (7th Cir. 1982).

For the foregoing reasons, the court is not dismissing the petition for Flores's failure to exhaust his administrative remedies.   In this case, where adjudication of Flores's deportability has already extended for 22 months, the additional delay attendant to exhaustion "would just contribute to the troubling delay [Flores] has already experienced in attempting to

-18-

resolve [his] immigration status." <u>Vongsa</u>, 2009 WL 4049143, at *5 (citing <u>McCarthy</u>, 503 U.S. at 146-47).

B.  <u>Applicability of the Mandatory Detention Statute</u>

This court lacks jurisdiction to review the Immigration Court's determination that Flores's conviction requires mandatory detention under 8 U.S.C. §1226(c)(1)(B) because the decisive factor is the Immigration Court's determination of deportability, which district courts may not review.  <u>See</u> 8 U.S.C. §1252(b)(9). However, this issue is distinct from Flores's other habeas claims.

8 U.S.C. §1226(c)(1)(B) provides in relevant part that "[t]he Attorney General shall take into custody any alien who...is deportable by reason of having committed any offense covered in section 1227(a)(2) . . . (B) . . . of this title."  The Immigration Judge found that Flores is deportable because he was convicted of an offense covered by 8 U.S.C. §1227(a)(2)(B)(i), which provides that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."  Consequently, Flores was found to be subject to mandatory detention.

Flores is challenging his mandatory detention in this court in

part on the grounds that his offense falls within the exception to §1227(a)(2)(B)(i) because (1) it was a single offense, (2) involving possession for one's own use, and (3) the possession was of 30 grams or less of marijuana.   It appears that Flores may be correct with respect prongs (1) and (3), in that there was a single conviction and the amount of marijuana possessed was less than 12 grams.   The remaining requirement that the possession be "for one's own use," presents a more open issue, as Flores was convicted for possession with intent to distribute.[10]

Flores argues that his possession was "for one's own use" because his state offense is the equivalent of simple possession under federal law.   21 U.S.C. §841(a) makes it unlawful to possess a controlled substance with intent to distribute.   21 U.S.C. §841(b)(4), the so-called "mitigating exception," states that "any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in" 21 U.S.C. §844 and 18 U.S.C. §3607.   21 U.S.C. §844 is entitled "Penalties for simple possession."   Consequently, because the Immigration Judge has already found that Flores qualifies for

---

[10]Based on a copy of Flores's criminal record provided to the court by Pre-Trial Services, it appears that what the parties refer to as Flores's "conviction" was in fact a continuance without a finding.   In any event, it appears that a continuance without a finding would be sufficient to constitute a conviction within the meaning of the statute. See 8 U.S.C. §1101(a)(48)(A)(i)(stating that, if adjudication of guilt has been withheld, "conviction" means the alien "has admitted sufficient facts to warrant a finding of guilt").

the mitigating exception, Flores argues that 21 U.S.C. §841(b)(4) mandates that his offense "shall" be treated as simple possession and, therefore, as "for one's own use."

Flores's argument, although grounded in federal criminal law rather than federal immigration law, has some support.  The Ninth Circuit has held that possession of marijuana that falls within the federal mitigating exception is necessarily possession "for one's own use" within the meaning of 8 U.S.C. §1227(a)(2)(B)(i) and, therefore, does not provide a basis for removal.  See Guevara v. Holder, 311 Fed. App'x 973, 974 (9th Cir. 2009).  The Ninth Circuit in Guevara reasoned that conviction under a Virginia state statute criminalizing possession of marijuana with intent to distribute did not constitute a removable offense because the state statute punished conduct within the federal mitigating exception and, therefore, "criminalize[d] conduct that would not constitute a removable offense under federal law."  Id.  Therefore, at least in the Ninth Circuit, where the removable offense involves conduct within the mitigating exception, and where the other elements of the exception to §1227(a)(2)(B)(i) are met, the alien is not deportable.  Id.; see also In re Moncada-Servellon, 24 I&N Dec. 62, 65 (BIA 2007)(stating that "the most natural, common-sense reading of the personal-use exception, viewed in its statutory context, is that it is directed at ameliorating the potentially harsh immigration consequences of the least serious drug offenses only -

that is, those involving the <u>simple possession</u> of small amounts of marijuana" and that "the concepts of 'simple possession' and 'possession . . . for one's own use' were understood by Congress to be interchangeable, rather than contradictory."). In the instant case, the Immigration Judge has already concluded that Flores's state law criminal conduct falls within the federal mitigating exception. Therefore, if <u>Guevara</u> is correct, it compels the conclusion that Flores is not deportable. Consequently, although the First Circuit has not examined the issue,[11] there is support for the conclusion that the Immigration Judge erred as a matter of law when he found Flores deportable under §1227(a)(2)(B)(i) and, therefore, erred when he subjected Flores to mandatory detention as a person deportable under that provision.[12]

However, this court lacks jurisdiction to decide whether Flores's offense falls within the mandatory detention statute, 8 U.S.C. §1226(c).[13]  8 U.S.C. §1252(b)(9) states:

---

[11]The First Circuit has examined 21 U.S.C. 841(b)(4) in the immigration law context, but did so in order to decide which party bears the burden of proving the mitigating exception's applicability. <u>See</u> <u>Julce v. Mukasey</u>, 530 F.3d 30, 35 (1st Cir. 2008).

[12]Flores has also argued that the government bears the burden of proving the non-applicability of the exception to §1227(a)(2)(B)(i). <u>See</u> <u>McCarthy v. Mukasey</u>, 305 Fed. App'x 670, 672 (1st Cir. 2009).

[13]Respondents did not make this argument in their memoranda. The court has examined the issue of subject matter jurisdiction <u>sua</u> <u>sponte</u>. <u>See</u> <u>In re Recticel Foam Corp.</u>, 859 F.2d 1000, 1002 (1st Cir. 1988).

Judicial review of all questions of law and fact,
including interpretation and application of
constitutional and statutory provisions, arising from any
action taken or proceeding brought to remove an alien
from the United States under this subchapter shall be
available only in judicial review of a final order under
this section.  Except as otherwise provided in this
section, no court shall have jurisdiction, by habeas
corpus under section 2241 of Title 28 or any other habeas
corpus provision, by section 1361 or 1651 of such title,
or by any other provision of law (statutory or
nonstatutory), to review such an order or such questions
of law or fact.

In <u>Aquilar v. U.S. Immigration and Customs Enforcement Div. of the
Dep't of Homeland Sec.</u>, the First Circuit explained that
§1252(b)(9), which "aims to consolidate '<u>all</u> questions of law and
fact' that 'arise from' either an 'action' or a 'proceeding'
brought in connection with the removal of an alien," "channels
federal court jurisdiction over 'such questions of law and fact' to
the courts of appeals and explicitly bars all other methods of
judicial review, including habeas."   510 F.3d 1, 9 (1st Cir.
2007)(quoting §1252(b)(9)).

However, the First Circuit also explained that:

the legislative history indicates that Congress intended
to create an exception for claims "independent" of
removal.  H.R.Rep. No. 109-72, at 175, <u>as reprinted in</u>
2005 U.S.C.C.A.N. at 300.  Thus, when it passed the REAL
ID Act, Congress stated unequivocally that the channeling
provisions of section 1252(b)(9) should not be read to
preclude "habeas review over challenges to detention."
<u>Id.</u> (indicating that detention claims are "independent of
challenges to removal orders").   In line with this
prescription, we have held that the district courts
retain jurisdiction over challenges to the legality of
detention in the immigration context.  <u>See</u> <u>Hernandez v.
Gonzales</u>, 424 F.3d 42, 42 (1st Cir. 2005)(holding that
detention claims are independent of removal proceedings

and, thus, not barred by section 1252(b)(9)). This carve-out seemingly encompasses constitutional challenges regarding the availability of bail. <u>See, e.g.</u>, <u>Demore v. Kim</u>, 538 U.S. 510, 516, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

. . . .

We thus read the words "arising from" in section 152(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process. Among others, claims that cannot effectively be handled through the available administrative process fall within that purview.

510 F.3d at 11.[14] In essence, the First Circuit has concluded that a district court generally lacks jurisdiction to review a question of law or fact arising from the removal process, but may review a question that is independent of removal or cannot effectively be handled through the available administrative process. <u>See id.</u>; <u>Hernandez</u>, 424 F.3d at 42 (holding challenge to length of detention was independent of challenge to removal order and therefore within the District Court's habeas jurisdiction); <u>Karim v. Cabral</u>, C.A.

---

[14]Although the Supreme Court held in <u>INS v. St. Cyr</u>, 533 U.S. 289, 313-14 (2001), that §1252(b)(9) did not apply to criminal aliens, courts have recognized that this is no longer the case after passage in 2005 of the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005). <u>See</u> <u>Iasu v. Smith</u>, 511 F.3d 881, 883, 885, 893 (9th Cir. 2007)(affirming dismissal under §1252(b)(9) of habeas petition filed by criminal alien); <u>Winkler v. Horgan</u>, 629 F. Supp. 2d 159, 161 (D. Mass. 2009)(stating, in discussion of §1252(b)(9) in a case involving a criminal alien, that "the Court has no jurisdiction to review petitioner's removability"); <u>Kapiamba v. Gonzales</u>, C.A. No. 07-335, 2009 WL 1406648, at *1, 2 (W.D. Mich. May 19, 2009)(holding the district court lacks jurisdiction to review the applicability of the mandatory detention statute to a criminal alien due to the effect of §1252(b)(9)).

No. 07-10139, 2007 WL 2746797, at *1 (D. Mass. Sept. 12, 2007)(stating that habeas jurisdiction remains in the District Court "if the detention challenge is merely ancillary to removal proceedings" and is directed towards "some essentially legal issue"); see also H.R. Rep. No. 109-72, at 175, as reprinted in 2005 U.S.C.C.A.N. 240, 300 (stating that the REAL ID Act "will not preclude habeas review over challenges to detention that are independent of challenges to removal orders").

Some challenges to the legality of detention are not independent of the removal process. See Aguilar, 510 F.3d at 13 (holding that the question of whether detention violates an alien's right to counsel is not independent of the removal process, because "[c]hallenges to removal orders premised on the government's putative violation of an alien's right to counsel are commonplace"). Here, the question of the applicability of the mandatory detention statute to Flores's offense, unlike questions regarding the length of detention, is not independent of removal. Rather, the application of 8 U.S.C. §1226(c)(1)(B) is conditioned on a determination of deportability under 8 U.S.C. §1227(a)(2)(B)(i).[15] The order of removal is also conditioned on

_____

[15]The court recognizes that an Immigration Judge deciding whether the mandatory detention statute applies to an alien must inquire whether the government "is substantially unlikely to establish at a merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention." In re Joseph, 22 I&N Dec. 799, 806 (BIA 1999). However, because this "substantially unlikely" standard for

the determination of deportability.  May 12, 2009 Decision at 13, 15; see 8 U.S.C. §§1101(a)(47)(A), 1229a.  Therefore, in this respect, unlike other possible challenges to detention, the mandatory detention and the order of removal are intertwined rather than independent.  Moreover, the administrative process includes a mechanism for administrative review of decisions regarding deportability in the detention context.  See 8 C.F.R. §1003.19(h)(2)(ii).  Consequently, under 8 U.S.C. §1252(b)(9), the court lacks jurisdiction to decide whether Flores's offense is covered by the mandatory detention statute, 8 U.S.C. §1226(c).  See Aguilar, 510 F.3d at 11; Winkler, 629 F. Supp. 2d at 161.

    C.  Mandatory Detention and Due Process

    Although the court may not review whether Flores's offense subjects him to mandatory detention under §1226(c), the court has jurisdiction to consider constitutional questions arising out of the application of the statute and questions independent of removal.  See Aguilar, 510 F.3d at 11, 19 (holding that question of whether detention violated the substantive due process right to

_____

initially deciding deportability is derived by the BIA from regulations directed to the BIA and the Immigration Judges, and because the Immigration Judge in this case has actually decided the merits of the removal proceeding, it is not clear what standard a district court would apply in making such a determination in habeas proceedings.  See id.; May 12, 2009 Decision at 13, 15.  In any event, the court concludes that even review under the "substantially unlikely" standard is sufficiently intertwined with removal to deprive the court of jurisdiction.

family integrity was within the district court's jurisdiction because "[t]he issue of family integrity is completely irrelevant to the mine-run of issues that will be litigated in removal proceedings, and the claims have no bearing on the aliens' immigration status"). Therefore, the court may examine whether, where Flores contests his deportability, and where he has been detained under the mandatory detention statute without any determination of whether he is a danger to society or a flight risk, prolonged mandatory detention violates the Due Process clause of the Fifth Amendment to the United States Constitution or some time limit on mandatory detention impliedly incorporated into the statute to avoid a constitutional confrontation. See id.; Vongsa, 2009 WL 4049143 at *3, 6 ("The law is clear that the Court has jurisdiction to consider Vongsa's habeas petition challenging the length of her pre-removal detention."); Bourquignon v. MacDonald, C.A. No. 09-30068, 2009 WL 3600379, at *5 (D. Mass. Oct. 30, 2009).

As the court has written previously, the holding of Zadvydas does not control this case because "Zadvydas concerns only detentions after a final order of removal is entered." Aug. 27, 2009 Order at 2 (citing 533 U.S. at 701-02). This is so because Zadvydas examined detention of an alien under 8 U.S.C. §1231(a)(6), which provides for discretionary continuing detention after the removal period, a 90-day period of mandatory detention required by 8 U.S.C. §1231(a)(2). See 533 U.S. at 688. The removal period

begins at the latest of three events: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; and (3) if the alien is detained or confined for a purpose other than immigration proceedings, the date the alien is released.   8 U.S.C. §1231(a)(1)(B).   Here, none of these events has yet occurred. Therefore, the removal period has not begun, and the post-removal period detention at issue in Zadvydas is not involved.[16]

However, the Court's reasoning in Zadvydas provides two principles important to the present case.   See 533 U.S. at 689, 690-91.   First, the indefinite or permanent civil detention of an alien is likely unconstitutional absent a "strong special justification" amounting to more than a mere risk of flight or dangerousness.   Id. at 690-91.   Second, to avoid serious doubts about a detention statute's constitutionality, a court may, if it is fairly possible to do so, construe the statute as containing an implicit requirement that the length of detention must be

---

[16]Indeed, the removal period may not begin for some time. Even if the BIA issues a final administrative order of removal, Flores may seek review of "purely legal issues" presented by the order of removal by the First Circuit. 8 U.S.C. §1252(a)(2)(C)-(D); Julce, 530 F.3d at 33.   Although the court need not decide this issue, if the First Circuit stays Flores's order of removal, it appears the removal period would not begin until the First Circuit issues its final order.   8 U.S.C. §1231(a)(1)(B); see Prieto-Romero v. Clark, 534 F.3d 1053, 1060 n.5, 1062 (9th Cir. 2008).

reasonable.  Id. at 689.

In addition, Demore is also distinguishable.  In Demore, the Court noted that the petitioner conceded that he was deportable based on certain criminal convictions and, therefore, subject to mandatory detention.  See 538 U.S. at 513-14.  The Court expressly limited its holding to situations in which a criminal alien has conceded that he is deportable.  Id. at 531.  Here, unlike in Demore, Flores contests, both in this proceeding and in the Immigration Court, his deportability and, by extension, the application of the mandatory detention statute.

Further, even if Demore were on point, the Court in Demore did not endorse the lengthy detention at issue in this case.  The Court in Demore stated that "Congress ... may require that persons ... be detained for the brief period necessary for their removal proceedings."  538 U.S. at 513.  This "limited period necessary for . . . removal proceedings" was thought to "last[] roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."  Id. at 526, 530-31.  Here, Flores has been detained for almost 22 months.  Moreover, much of that time was not necessary for his removal proceeding or a foreseeable consequence of Flores's decision to pursue appeals, as seven months of delay are attributable to the Immigration Court's failure to produce an adequate record of the proceedings.  See Demore, 538 U.S. at 526,

-29-

530-31.   Consequently, although <u>Demore</u> sets no particular time limit on mandatory detention, the holding in <u>Demore</u> says little about the constitutionality of mandatory detention for a period of almost 22 months, a substantial portion of which would have been unnecessary but for the government's mistakes.   At most, <u>Demore</u> refutes Flores's contention that the mandatory detention of a lawful permanent resident is never constitutional.   <u>See</u> 538 U.S. at 513-16.

Given the absence of controlling precedent, the court must derive and apply an appropriate standard for adjudicating the legality of Flores's mandatory detention.   The court must resolve "that bit of unfinished business in <u>Demore</u> - whether indefinite pre-removal detention is lawful, or whether due process or §1226(c) itself imposes some time limitation."   <u>Vongsa</u>, 2009 WL 4049143, at *6.

Respondents argue, based on <u>Zadvydas</u> and <u>Demore</u>, that there is no presumptively unreasonable period of time for mandatory detention, but rather that mandatory detention would become unconstitutional if it was "indefinite" or "potentially permanent," or where "termination of the alien's detention is not foreseeable."   Response and Mot. to Dismiss at 7.   According to respondents, a lengthy period of detention is permissible where the removal proceedings have "a definite, attainable or foreseeable termination point" or "were made longer by appeals, remands, and other legal

actions taken by the alien." See id. at 8 (citing Matthias v. Hogan, 2008 WL 913522 (M.D. Pa. Mar. 31, 2008); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008); Begir v. Clark, 220 Fed. App'x 469, 471 (9th Cir. 2007); Agyeman v. I.N.S. Assistant District Director Coachman, 74 Fed. App'x 691, 693-94 (9th Cir. 2003); Tavares v. Attorney General, 211 Fed. App'x 127, 128 (3d Cir. 2007)).

The cases cited by respondents as supporting lengthy detention in this case are all materially distiguishable or fail to support respondents' position. In Matthais, the period of detention was only seven months, "which is temporary confinement and not a lengthy mandatory detention." 2008 WL 913522, at *6. In Tavares, the habeas claim was moot, a related civil rights claim was barred by sovereign immunity, and the petitioner conceded that he was subject to mandatory detention pursuant to 8 U.S.C. §1226(c) because he was deportable due to commission of an aggravated felony. 211 Fed. App'x at 128 and n.1. In Begir, the detention was discretionary detention pursuant to 8 U.S.C. §1226(a), for which a bail hearing was performed, rather than mandatory detention without a bail hearing under §1226(c). 220 Fed. App'x at 470. Similarly, in Agyeman, the "detention ha[d] always been pursuant to . . . 8 U.S.C. §1226(a)," and the petitioner received a bail hearing. 74 Fed. App'x at 693-94. Prince actually undermines respondents' position, as the court there held that, when the

petitioner's detention reached 17 months, his "detention approaches a duration which becomes problematic," and, therefore, "the immigration judge should . . . require that the government provide specific reasons why the continuation of [p]etitioner's somewhat lengthy detention is justified." 593 F. Supp. 2d at 736.

Flores argues that, if a detained alien contests his deportability and has a legitimate potential defense to removal, substantive due process requires that he receive an individualized bail hearing and be eligible for release on bail while awaiting the final removal decision. Pet. at 5, 6 (citing Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001); Bonsol v. Perryman, 240 F. Supp. 2d 823 (N.D. Ill. 2003); Vang, 149 F. Supp. 2d 1027). In the cases cited by Flores, courts concluded that government policies requiring the detention of lawful permanent residents must be narrowly tailored to meet a compelling government interest. Bonsol, 240 F. Supp. 2d at 826.

Although the First Circuit has not decided which standard courts should employ when evaluating whether mandatory detention violates constitutional due process requirements, district courts in this circuit have concluded that §1226(c) includes an implicit requirement that "removal proceedings, and the detention that accompanies them, be concluded within a reasonable time." Vongsa, 2009 WL 4049143, at *9; see Bourquignon, 2009 WL 3600379, at *7. This conclusion is persuasive, as it follows the principles

-32-

articulated in Zadvydas without intruding on the holding of Demore
that an alien who concedes that he is deportable may be held for
the brief period necessary for his removal proceedings.   See
Demore, 538 U.S. at 513, 531; Zadvydas, 533 U.S. at 689, 690-91.
Moreover, this approach implements the limits articulated by
Justice Anthony Kennedy in his Demore concurrence, in which he
recognized due process concerns in the pre-removal context and
concluded that, where the government has caused "unreasonable
delay" in deportation proceedings, the alien "could be entitled to
an individualized determination as to his risk of flight or
dangerousness."   See Demore, 538 U.S. at 532 (Kennedy, J.,
concurring).   As one court has recently noted, "Justice Kennedy's
concurrence explicitly illustrates the intersection between
Zadvydas and Demore: 'Unreasonable delay' can be constitutionally
problematic whether it occurs pre- or post-removal." Vongsa, 2009
WL 4049143, at *8.   Accordingly, to avoid a constitutional
confrontation, the court construes §1226(c) to implicitly require
that removal proceedings and the corresponding detention be
completed within a reasonable period of time, beyond which
detention may not continue without an individualized determination
of risk of flight and dangerousness.   See Ly v. Hansen, 351 F.3d
263, 270 (6th Cir. 2003); Vongsa, 2009 WL 4049143, at *8,9.

     In deciding whether removal proceedings have been unreasonably
lengthy, the court is guided by the Sixth Circuit's discussion in

Ly.   See 351 F.3d at 271-73.   In that case, the Sixth Circuit affirmed the grant of habeas corpus and, in doing so, "constru[ed] the pre-removal detention statute to include an implicit requirement that removal proceedings be concluded within a reasonable time."   Id. at 270.   The Sixth Circuit then stated:

> We must next define a reasonable time limitation for pre-removal detention, and finally determine whether or not the INS acted reasonably in this case.   A bright-line time limitation, as imposed in Zadvydas, would not be appropriate for the pre-removal period; hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant.   In the absence of a set period of time, courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings.

Id. at 271.   The court then identified factors suggesting unreasonable delay, which included: (1) the overall length of detention; (2) whether the civil detention is for a longer period than the criminal sentence for the crimes resulting in the deportable status; (3) whether actual removal is reasonably foreseeable; (4) whether the immigration authority acted promptly to advance its interests; and (5) whether the petitioner engaged in dilatory tactics in the Immigration Court.   See id. at 271-72; see also Alli v. Decker, 644 F. Supp. 2d 535, 543-45 (M.D. Pa. 2009)(relying on Ly to derive similar factors for the reasonableness inquiry); cf. Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005)(concluding that §1226(c) applies to "expedited removal" and requiring release or a bail hearing where the alien

did not concede deportability, the length of detention was two years and eight months, and the court anticipated lengthy appellate proceedings before the Circuit Court of Appeals).[17]

The factors employed in Ly persuade the court that Flores's mandatory detention pursuant 8 U.S.C. §1226(c) has extended beyond any reasonable time limitation. First, Flores's overall length of detention is almost 22 months, a period of time well within the range considered unreasonable by other courts. See Ly, 351 F.3d at 266, 273 (holding 500 days of detention to be unreasonable); Vongsa, 2009 WL 4049143, at *10 (holding 20 months of detention to be unreasonable and collecting similar cases); Bourguignon, 2009 WL 3600379, at *8-9 (holding 27 months of detention to be unreasonable).

Second, the record does not reflect that Flores was ever imprisoned for his state law conviction. Roughly a week passed between the time of Flores's conviction and the time he was taken into ICE custody. Therefore, the length of his civil detention far exceeds the length of any possible period of punitive incarceration. See Ly, 351 F.3d at 271 (granting habeas relief

---

[17]The court has not relied heavily on Tijani for two reasons. First, the reasoning in Tijani is brief and provides few guideposts for the analysis of future cases. See 430 F.3d at 1242. Second, in a subsequent case, Casas-Castrillon v. Dep't of Homeland Security, the Ninth Circuit indicated that the holding of Tijani may apply only to aliens who, unlike Flores, have completed proceedings before the BIA and are awaiting review by a circuit court of appeals. See 535 F.3d 942, 951 (9th Cir. 2008).

where 500 days of mandatory detention followed 12 months of incarceration associated with two criminal sentences); Vongsa, 2009 WL 4049143, at *10 (holding detention to be unreasonable when it lasted "ten times as long as [petitioner's] original 60-day sentence").

Third, resolution of Flores's removal proceedings is not reasonably foreseeable. Flores has vigorously contested deportability and presented what may prove to be a valid defense in view of the Ninth Circuit's decision in Guevara, 311 Fed. App'x at 974, discussed previously. Although it is not for this court to decide whether Flores is deportable, the court can recognize that the issue is not finally decided, that there is authority for the BIA or the First Circuit to conclude that he is not, and that this added complexity is likely to extend the removal proceedings. See Vongsa, 2009 WL 4049143, at *11 (concluding mandatory detention was unreasonable where petitioner's pending challenge to deportation was "colorable").

Additionally, resolution of removal proceedings is not reasonably foreseeable because the court lacks reliable information regarding the length of time required to complete the current appellate proceedings. Respondents initially represented that the current appeal to the BIA could be decided within 45 days of the completion of briefing on October 6, 2009. Respondents' Mot. for Extension of Time at 2. At the November 6, 2009 hearing,

respondents represented that the BIA was expected to decide Flores's appeal within six to eight weeks of October 2, 2009, the date when briefing was actually completed. Respondents subsequently requested an expedited decision by the BIA. However, the BIA has not decided the appeal despite the fact that roughly ten weeks have elapsed since October 2, 2009.

In the end, the period of mandatory detention under §1226(c) may be considerably longer than the time until the BIA's decision. Although the BIA is considering Flores's latest appeal, the BIA may remand the case to the Immigration Judge for additional action, as it has done three times previously. Moreover, even if the BIA simply affirms the order of removal, if Flores appeals to the First Circuit, and if the First Circuit stays removal, the court assumes, without yet having occasion to decide, that the next phase of detention, which will be the 90-day removal period as required by 8 U.S.C. §1231(a)(2), will not commence until the First Circuit issues its final order. See 8 U.S.C. §1231(a)(1)(B)(ii); Bourguignon, 2009 WL 3600379, at *3, 8 (stating, where BIA appeal was pending and petitioner intended to appeal any final administrative order of removal to the circuit court of appeals, that "a final decision may be many months away" and that "there is no end in sight"); cf. Prieto-Romero v. Clark, 534 F.3d 1053, 1060 n.5, 1062 (9th Cir. 2008)(holding that, where circuit court of appeals grants a stay of removal, detention continues under §1226

rather than §1231). Therefore, the court does not conclude that removal proceedings are likely to be resolved in the reasonably foreseeable future. See Bourguignon, 2009 WL 3600379, at *3, 8 (concluding mandatory detention was unreasonable despite pending appeal before the BIA); Alli, 644 F. Supp. 2d at 544 ("[P]rolonged future detention will be most relevant when it follows an already prolonged period of detention.").

Fourth, the Immigration Court has not acted promptly to advance its interests. As previously stated, approximately seven months of delay are attributable to the Immigration Court's failure to properly document the proceeding. See Madrane v. Hogan, 520 F. Supp. 2d 654, 660, 670 (M.D. Pa. 2007)(granting habeas relief where "the appeal process [was] delayed for several months as a result of [the IJ's] failure to record substantial portions of the record testimony").

Fifth, the record does not indicate that Flores has engaged in dilatory tactics. The only suggestion in the record of any unreasonable delay by Flores is a period of approximately two weeks caused by the withdrawal of Flores's counsel. It is not clear whether or why Flores caused that withdrawal. See Vonqsa, 2009 WL 4049143, at *10, 11 (concluding detention was unreasonable where the brief delay cause by the petitioner was "a drop in the proverbial bucket"). Moreover, to the extent that Flores has delayed the removal process simply by contesting deportation, that

delay should not be counted against him.  As the court recognized in <u>Ly</u>, "although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take."  351 F.3d at 272.

For these reasons, the court concludes that Flores has shown that his continued mandatory detention is the result of unreasonable delay and that his detention violates the implicit reasonableness limitation incorporated into 8 U.S.C. §1226(c). Many recent District Court cases have similarly analyzed lengthy periods of mandatory detention and concluded that such violation of this reasonableness requirement entitles the alien to habeas relief.  For example, on October 30, 2009, Judge Michael Ponsor of this district construed §1226(c) to include an implicit reasonableness requirement and held that 27 months of detention, most of which was pursuant to §1226(c), extended "far beyond any reasonable period" and could not continue without a bail hearing. See <u>Bourquignon</u>, 2009 WL 3600379, at *1.  Similarly, on November 24, 2009, Judge Nancy Gertner of this district construed §1226(c) to include an implicit reasonableness requirement and held that detention approaching 20 months in duration was unreasonable and could not continue without a bail hearing.  See <u>Vongsa</u>, 2009 WL 4049143, at *10, 11.  This decision regarding Flores's detention is consistent with the growing consensus within this district and, it appears, throughout the federal courts, that lengthy periods of

mandatory pre-removal detention raise significant constitutional concerns which must be addressed by courts exercising their habeas authority. <u>See</u> <u>id.</u>; <u>Bourquignon</u>, 2009 WL 3600379, at *1; <u>Wilks v. U.S. Dep't of Homeland Security</u>, Civ. No. 1:CV-07-2171, 2008 WL 4820654, at *3 (M.D. Pa. Nov. 3, 2008)(granting habeas relief after approximately two and one-half years of detention); <u>Madrane</u>, 520 F. Supp. 2d 654, at 670 (granting habeas relief after approximately three years of detention); <u>Hyppolite v. Enzer</u>, No. 3:07cv729, 2007 WL 1794096, at *1 (D. Conn. June 19, 2007)(granting habeas relief after 15 months of detention); <u>Martinez v. Gonzales</u>, 504 F. Supp. 2d 887, 899-900 (C.D. Cal. 2007)(granting habeas relief after approximately 5 years of detention); <u>Diomande v. Wrona</u>, No. 05-73290, 2005 WL 3369498, at *1, 3 (E.D. Mich. Dec. 12, 2005)(granting habeas relief after 21 months of detention); <u>Parlak v. Baker</u>, 374 F. Supp. 2d 551, 561-62 (E.D. Mich. 2005)(granting habeas relief after approximately 10 months of detention), <u>vacated as moot</u>, No. 05-2003, 2006 WL 3634385 (6th Cir. Apr. 27, 2006).

D. <u>Remedy</u>

"[H]abeas corpus is, at its core, an equitable remedy." <u>Schlup v. Delo</u>, 513 U.S. 298, 319 (1995). 28 U.S.C. §2243 provides that "[t]he court shall . . . dispose of the matter as law and justice require." As the Supreme Court has recently written, historically, "common-law habeas corpus was, above all, an adaptable remedy" in which the "court's role was most extensive in

cases of pretrial and noncriminal detention." Boumediene v. Bush, 128 S. Ct. 2229, 2267 (2008).

"[W]hen the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." Id. at 2271.   However, "[w]hile the court's discretion to devise an equitable remedy is considerable, it is not unfettered." Ferrara v. United States, 384 F. Supp. 2d 384, 434 (D. Mass. 2005), aff'd, 456 F.3d 278 (1st Cir. 2006).   "Rather, 'the remedy should be tailored to the injury suffered . . . and should not unnecessarily infringe on competing interests.'" Id. (quoting United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998)).

Respondents have argued that the court's equitable power to tailor an appropriate remedy in this case is, in effect, restricted by statute.  Specifically, respondents assert that, where mandatory detention pursuant to 8 U.S.C. §1226(c) has become unreasonably lengthy, the Executive's detention authority automatically reverts to 8 U.S.C. §1226(a), which authorizes detention at the discretion of the Attorney General.  Respondents have presented essentially two arguments in favor of this view.  First, respondents note that, by its terms, §1226(a) applies "[e]xcept as provided in [§1226(c)]" and argue that, therefore, §1226(a) applies any time after mandatory detention under §1226(c) has lapsed because detention has

become unreasonably prolonged.   Second, respondents assert that application of any framework other than §1226(a) in this circumstance would make available to criminal aliens a more favorable standard for release than that available to non-criminal aliens, who bear the burden of proving that release would not pose a danger to society or risk of flight.   See 8 C.F.R. §236.1(c)(8).

The court understands that Congress has evinced clear and unequivocal intent that discretionary bail determinations <u>under §1226(a)</u> should be made by the Attorney General or those to whom he has delegated this function.   <u>See</u> 8 U.S.C. §§1226(e), 1252(a)(2)(B)(ii); 8 C.F.R. §1236.1(d)(1).   Under the relevant regulations, the Department of Homeland Security makes the initial custody determination, which can be reviewed administratively by an Immigration Judge and appealed to the Board of Immigration Appeals. 8 C.F.R. §§236.1(d), 1003.19(a), 1236.1(d).   The regulations require that the alien bear the burden of proof in such proceedings. 8 C.F.R. §§236.1(c)(8), 1236.1(c)(8).   This court would apparently lack jurisdiction to review a discretionary bail determination made pursuant to §1226(a).   <u>See</u> 8 U.S.C. §§1226(e), 1252(a)(2)(B)(ii); <u>Alsamhouri v. Gonzales</u>, 484 F.3d 117, 122 (1st Cir. 2007)(indicating that §1252(a)(2)(B)(ii) applies to decisions made under §1226); <u>Saint Fort v. Ashcroft</u>, 329 F.3d 191, 203 (1st Cir. 2003)(stating that habeas review may consider whether an alien is eligible for a discretionary determination, but may not consider

the "agency's decision to exercise or not exercise its discretion to grant relief").  Accordingly, if respondents were correct that detention authority reverts to §1226(a), habeas relief in this case essentially would be limited to a declaration that Flores is eligible for release at the discretion of the Attorney General. See Lonchar v. Thomas, 517 U.S. 314, 323 (1996)("[T]he fact that the writ has been called an equitable remedy does not authorize a court to ignore . . . statutes, rules, and precedents." (internal citations and quotation marks omitted)).

However, the court finds that when mandatory detention pursuant to §1226(c) has become unreasonably lengthy, the Executive's detention authority does not revert to §1226(a), which requires that the Immigration Judge conduct the bail hearing. There is no controlling authority on this point.  Zadvydas dealt with a different statutory provision and, therefore, did not decide this issue.  See 533 U.S. at 695, 699.  Demore also did not resolve the issue, because in that case the Supreme Court held that mandatory detention under 8 U.S.C. §1226(c) for six months was not unconstitutional.  See 538 U.S. at 531.  Justice Kennedy, in his influential concurrence in Demore, did not specifically address the issue of who should conduct any bail hearing that might be required by an unreasonably prolonged mandatory detention.  Id. at 532 (Kennedy, J., concurring).  Rather, he merely stated in general terms that "a lawful permanent resident alien such as respondent

could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id.

There also is no circuit authority on point. The Ninth Circuit, in Casas-Castrillon, concluded that, where §1226(c) did not apply, detention was pursuant to §1226(a). See Casas-Castrillon, 535 F.3d at 947-48, 950-51 (citing Tijani, 430 F.3d at 1242). However, that decision did not involve circumstances in which mandatory detention under §1226(c) was generally authorized but had become unreasonably lengthy. See Casas-Castrillon, 535 F.3d at 947-48, 951. Rather, the decision was based on the categorical holding that when an order of removal becomes administratively final, §1226(c) does not apply and, therefore, does not provide authority for detention. See id.; cf. Tijani, 430 F.3d at 1242 (stating that petitioner's appeal of removal was pending before the appeals court and, therefore, administratively final). Accordingly, Casas-Castrillon does not stand for the proposition that when mandatory detention is generally authorized under §1226(c) but becomes unreasonably lengthy, §1226(a) serves as the alternate source of detention authority. See 535 F.3d at 948, 950-51.

The Sixth Circuit's decision in Ly is closer to this case in that §1226(c) was generally applicable to an alien in Ly's circumstances. See 351 F.3d at 266. However, the holding of the

case with respect to which arbiter should make a bail determination
is unclear. See id. It appears that the district court's order in
Ly, which was ultimately affirmed, did remand the case for a bail
hearing before a member of the Executive Branch. Id. at 266, 274
("The INS, in accordance with the district court's order, conducted
a bond hearing."). However, both parties in the instant case have
taken the position that Ly indicates that the court may conduct a
bail hearing as part of the reasonableness inquiry. See Resp'ts'
Supplemental Briefing Pursuant to Ct.'s Order of Nov. 9, 2009, at
5; Mot. in Compliance with the Ct.'s Nov. 9th Order, at 2. This
may be correct, as the Sixth Circuit in Ly "affirm[ed] the result
below for reasons different than those relied on by the district
court." 351 F.3d at 265. Although the court in Ly stated that "we
do not require the United States to hold bond hearings for every
criminal alien detained under [§1226]" and that "the liberty
interest of deportable criminal aliens is adequately served by the
reasonableness limitation on the period of incarceration," it is
not clear whether this language is meant to indicate that no bail
hearing is required as long as the mandatory detention is
reasonably brief or that no bail hearing is ever required beyond
the consideration given to dangerousness and flight risk inherent
in the district court's reasonableness inquiry. See id. at 270 and
n.2. For these reasons, the court does not find Ly particularly
helpful in answering the question of the appropriate habeas remedy

-45-

for Flores's unreasonably long mandatory detention.

District courts examining this issue have ordered different remedies. In one case, the court ordered immediate release but permitted the Executive Branch to select reasonable conditions of supervision. See Nunez-Pimentel v. U.S. Dep't of Homeland Security Immigration Customs Enforcement, C.A. No. 07-1915, 2008 WL 2593806, at *5 (M.D. Pa. June 27, 2008). In other cases, the court conducted the bail hearing or some equivalent proceeding without the involvement of the Immigration Judge. See, e.g., Madrane v. Hogan, 520 F. Supp. 2d 654, 667-70 (M.D. Pa. 2007); Hyppolite v. Enzer, No. 3:07cv729, 2007 WL 1794096, at *1 (D. Conn. June 19, 2007); Diomande v. Wrona, No. 05-73290, 2005 WL 3369498, at *3 (E.D. Mich. Dec. 12, 2005). In both Vongsa and Bourquignon, the courts ordered the Immigration Judge to conduct the bail hearing but shifted the burden of proof to the government and retained supervisory authority over the proceeding. See Vongsa, 2009 WL 4049143, at *12; Bourquignon, 2009 WL 3600379, at *8-9; see also Wilks v. U.S. Dep't of Homeland Security, C.A. No. 07-2171, 2008 WL 4820654, at *3 (M.D. Pa. Nov. 3, 2008).

The diversity in the remedies ordered suggests that, without articulating the rationale, judges have understood that they were exercising their equitable habeas power rather than responding to a statutory mandate. For example, in neither Vongsa nor Bourquignon did the court provide significant discussion of why the

-46-

Immigration Judge rather than the district court should decide whether and on what conditions the alien should be released.  See Vongsa, 2009 WL 4049143, at *12; Bourquignon, 2009 WL 3600379, at *8-9.  However, in both cases the court shifted the burden of proof at the hearing from the alien to the government and indicated that the court would conduct the hearing if the Immigration Judge failed to do so.  Compare 8 C.F.R. §§236.1(c)(8), 1236.1(c)(8), with Vongsa, 2009 WL 4049143, at *12; Bourquignon, 2009 WL 3600379, at *8-9.  If these courts had concluded that detention authority had shifted from §1226(c) to §1226(a), they would not have had the authority to do this.  Rather, it appears that these courts implicitly found that the issue of continued detention was not governed by §1226(a) and, therefore, exercised their equitable power to fashion an appropriate remedy.  See Schlup, 513 U.S. at 319.

In any event, this court concludes that the issue of Flores's continued detention is not now governed by 8 U.S.C. §1226(a) and that it is most appropriate that the court conduct the bail hearing, essentially for the reasons stated in Alli.  See 644 F. Supp. 2d at 541-42.  In Alli, the petitioners had been detained for 9 months and 20 months respectively, pursuant to §1226(c).  See 644 F. Supp. 2d at 537.  The court concluded that, if "an alien detained pursuant to §1226(c) makes a showing via a habeas petition that detention is no longer reasonable," detention authority would

not shift to §1226(a), but rather "the alien must be afforded a hearing before the habeas court at which the government bears the burden of justifying continued detention based on traditional bail factors such as the alien's risk of flight and potential danger to the community."  Id. at 541-42.  The court stated:

> The Court adopts a reasonableness standard administered by the federal courts because this approach avoids constitutional concerns while working the least amount of damage to the statutory scheme Congress created. . . . The intent of Congress in adopting §1226(c) was to severely limit, if not eliminate, the discretion of the Attorney General to release deportable criminal aliens pending removal proceedings.  As the Demore court noted, Congress had before it evidence that, when the Attorney General had broad discretion to conduct individualized bond hearings and to release criminal aliens from custody during their removal proceedings . . . other considerations such as limitations on funding and detention space, affected release determinations.  538 U.S. at 519 . . . .
>
> The construction of §1226(c) adopted by the Court implements Congress's intention of assuring attendance at removal proceedings by permitting mandatory detention, to the extent constitutionally permissible, and connecting the duration of detention to the time reasonably necessary to complete such proceedings.  That a habeas court determines whether continued detention is justified also addresses Congress's concern that release decisions be based on traditional bail considerations such as risk of flight and danger to the community. . . . [F]unel[ing] deportable criminal aliens to §1226(a) . . . [involves] a portion of the statute which Congress never intended to apply to such aliens, and requires the Attorney General to exercise the very discretion over release of criminal aliens which Congress intended to restrict.
>
> Supervision of the reasonableness of detention through the habeas process also provides justified protection of the alien's liberty interest and conserves judicial resources.  If the remedy for unreasonable detention were an order directing a bond hearing under §1226(a), an alien who has already demonstrated that his

> detention is no longer reasonable would remain detained pending an initial custody determination by the DHS district director, 8 C.F.R. §236.1(d)(1), a hearing before an immigration judge, id., the IJ's decision, and a potential appeal to the BIA, id. §236.1(d)(3). In addition, . . . the only recourse for an alien dissatisfied with the outcome of his bond hearing would be to return to court again and file another habeas action. Cf. Ly, 351 F.3d at 272. A bond hearing before the habeas court avoids this circuitous and potentially lengthy process. The habeas court's determining whether a petitioner is entitled to release also serves the "'historic purpose of the writ,' namely, 'to relieve detention by executive authorities without judicial trial.'" Zadvydas, 533 U.S. at 699.

Alli, 644 F. Supp. 2d at 541-42.

As indicated earlier, respondents' arguments that §1226(a) applies are not persuasive. The court has accepted for present purposes the Immigration Judge's conclusion that Flores's conviction is covered by the mandatory detention statute, §1226(c), which generally applies when, as here, there is not yet a final administrative order of removal. Therefore, the court concludes that Flores is currently subject to detention "as provided in" §1226(c). As explained in Alli, this interpretation is consistent with Congress's intent to withdraw from the Executive discretion over the detention of criminal aliens. See 644 F. Supp. 2d at 541-42.

Moreover, contrary to respondents' contention, Flores will not receive more favorable treatment than aliens subject to §1226(a). Although the precise nature of Flores's bail hearing, including the burden of proof, will be determined through the exercise of the

court's equitable power, Flores, unlike aliens subject to discretionary detention, has had to wait for his removal proceedings to become unreasonably lengthy to receive any individualized consideration of release at all. Thus, a criminal alien who becomes eligible for a discretionary habeas remedy has paid the heavy price of many months of potentially unjustified incarceration. Moreover, the court can take into account any unjustified disparities between Flores's treatment and that afforded non-criminal aliens in fashioning standards and procedures for the bail hearing.

In view of the foregoing, the court concludes that detention authority has not shifted to §1226(a). Rather, the court finds that detention prior to the removal period must continue, if at all, under §1226(c).

Where, as here, the period of detention has violated the implicit statutory reasonableness requirement of §1226(c), a bail hearing is the appropriate remedy. Vongsa, 2009 WL 4049143, at *11 (citing Demore, 538 U.S. at 532-33 (Kennedy, J., concurring)); Bourquignon, 2009 WL 3600379, at *8. Whether Flores's release on certain conditions is appropriate will be determined in a proceeding crafted by the court in the exercise of its discretion based on the unique facts of this case. See Zadvydas, 533 U.S. at 699 ("[O]f course, the alien's release may and should be conditioned on any of the various forms of supervised release that

are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."); Ferrara, 384 F. Supp. 2d at 434.

In Alli, the court described a series of factors that weigh in favor of the bail proceeding being conducted by the district court. See 644 F. Supp. 2d at 542. These factors are especially compelling in this case, where the prior proceedings in the Immigration Court included substantial and unnecessary delay. Accordingly, based upon the unique facts of this particular case, the court, in the exercise of its equitable discretion, has concluded that a bail hearing before this court is the proper remedy.

IV.  ORDER

Accordingly, it is hereby ORDERED that:

1.  Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1) is ALLOWED.  The most appropriate equitable remedy is a bail hearing held before this court.  This case will remain open pending the court's decision regarding whether there are feasible conditions that will reasonably assure that, if released, petitioner will appear as required in the future and not be a danger to any individual or the community.[18]

---

[18]By way of postscript, the court states that it conducted the bail hearing on December 15 and 16, 2009.  Because the hearing was part of a habeas proceeding, the rules of evidence applied.  See Fed. R. Evid. 1101(e); Loliscio v. Goord, 263 F.3d 178, 186 (2d Cir. 2001).  The hearing was modeled in other

2.   Respondent's Motion to Dismiss (Docket No. 15) is DENIED.

3.   Petitioner's Motion to Sustain Habeas Corpus Petition (Docket No. 12) is MOOT.


<u>      /s/ Mark L. Wolf      </u>
UNITED STATES DISTRICT JUDGE

---

respects on the procedure described by 18 U.S.C. §3142.  The
court determined that there was a combination of conditions that
would reasonably assure Flores's appearance and the safety of any
other person and the community.  Accordingly, the court ordered
Flores released subject to those conditions.  <u>See</u> Dec. 18, 2009
Order at 1.